**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

KEITH GRAY & DEBORAH HARRIS                                    PLAINTIFFS

VERSUS                                CIVIL ACTION NO. 5:05cv210-KS-JMR

DOUG UPCHURCH, JONES AND UPCHURCH, INC.,
BUFORD LAND PARTNERS, BUFORD PARTNERS, L.P.,
PETE BUFORD, J. ALLEN DERIVAUX,
WASHINGTON MUTUAL HOME LOANS, INC.,
LONG BEACH MORTGAGE COMPANY,
MISSISSIPPI MORTGAGE, STEWART TITLE, and
JOHN DOES                                              DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on Doug Upchurch, Jones and Upchurch, Inc., Buford Land Partners, Buford Partners, L.P., Pete Buford, and J. Allen Derivaux's Motion to Dismiss [**docket entry no. 3**], Washington Mutual Home Loans, Inc. and Long Beach Mortgage Company's Motion to Dismiss [**docket entry no. 5**], and Keith Gray and Deborah Harris's Motion to Amend the Complaint [**docket entry no. 10**]. Having reviewed the motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

**FACTS AND PROCEDURAL HISTORY**

In November of 2001, Keith Gray and Deborah Harris entered into a contract with Buford Land Partners to purchase a new mobile home on 0.308 acres in Warren County, Mississippi. Plaintiffs allege that the agreed upon purchase price was $66,009.65. On January 24, 2002, the parties closed the transaction and executed

the required HUD-1 Settlement Statement.  Although the plaintiffs claim that the agreed upon price was $66,009.65, the HUD-1 lists the sales price as $80,000 with $12,000 to be financed by the seller, Buford Land Partners.  Gray and Harris claim that Buford Land Partners assured them that "they would not be required or expected to pay [the $12,000]."  (First Am. Compl. 5.)  The plaintiffs allege that Doug Upchurch[1] and Pete Buford created a series of fraudulent appraisals to artificially inflate the mobile home's appraised value to $80,000.

At closing, Plaintiffs executed a deed of trust in favor of Long Beach Mortgage Company[2] securing a $64,000.00 promissory note at a 12.65% variable interest rate.  The HUD-1 also shows that the plaintiffs paid, in cash, $6,079.55 in closing costs and $4,000.00 as a down payment; however, Gray and Harris allege that they only provided $2,500 as a down payment and nothing by way of closing costs.  Plaintiffs aver that the $10,079.55 was paid by Pete Buford through the closing attorney, J. Allen Derivaux, in a scheme to make it appear as though the plaintiffs had more equity in the property than they really did.

---

[1] Doug Upchurch is the owner of Real Estate Appraisers, Inc. David Wooten, an employee of Real Estate Appraisers, Inc., did the appraisal of the plaintiffs' mobile home.  The plaintiffs allege that the comparable sales used by Wooten were "conjured out of thin air to . . . overvalu[e] the properties in the area . . . ." (Second Am. Compl. 7.)

[2] Long Beach Mortgage Company is a subsidiary of Washington Mutual.

On November 14, 2005, Gray and Harris filed a complaint with this Court.  Eight days later on November 22, 2005, they filed their first amended complaint.  In their first amended complaint, Plaintiffs' alleged violations of the Truth in Lending Act, the Federal Real Estate Settlement Procedures Act, the Federal Equal Credit Opportunity Act, and the Federal Community Reinvestment Act.  Plaintiffs further alleged several state law fraud claims flowing from the 2001 contract and the January 24, 2005 closing.  On March 24, 2005, Doug Upchurch, Pete Buford, J. Allen Derivaux, Upchurch and Jones, Inc., Buford Land Partners, and Buford Partners L.P. filed a motion to dismiss.  Washington Mutual and Long Beach filed their own motion to dismiss on April 7, 2005.  On April 17, 2005, Plaintiffs responded to both motions.  The next day, Gray and Harris filed a Motion to Amend the Complaint and attached a seventy-eight paragraph proposed Second Amended Complaint, which contains various Racketeer Influenced and Corrupt Organizations Act claims ("RICO").  Washington Mutual and Long Beach argue that the motion to amend should be denied as futile.

**DISCUSSION**

I. **MOTION TO AMEND**

Federal Rule of Civil Procedure 15(a) provides that leave to amend the pleadings "shall be freely given when justice so requires."  Although it is within the Court's discretion whether to grant or deny a motion to amend, the motion should only be denied

-3-

where "there is a substantial reason to do so." <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994), <u>quoted in Jacobsen v. Osborne</u>, 133 F.3d 315, 318 (5th Cir. 1998).  One such reason for denying a motion to amend is that the amendment would be futile.  <u>Jacobsen</u>, 133 F.3d at 318.  The defendants assert two grounds of futility: (1) all claims contained within the second amended complaint are barred by the applicable statutes of limitations, and (2) the plaintiffs' claims cannot survive Rule 12(b)(6) scrutiny.

   A.   <u>Do the plaintiffs' RICO Claims Relate Back to the Filing of the First Complaint</u>?

   "Civil RICO actions are subject to a four-year statute of limitations." <u>Boulmay v. Rampart, 920, Inc.</u>, 124 Fed. Appx. 889, 891 (5th Cir. 2005).  RICO claims accrue, and the statute begins to run, on the date when the plaintiffs should have discovered their injury.  <u>Id.</u>  Gray and Harris were allegedly injured when the sale of the mobile home was consummated on January 24, 2002.  Moreover, the plaintiffs should have been aware of the alleged fraud upon them at the closing since they signed several documents listing the $80,000 contract price rather than the expected $66,009.55 price. <u>See</u> <u>Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co. Inc.</u>, 584 So. 2d 1254, 1257 (Miss. 1991) (imputing knowledge contained within a signed contract to the signor, even though signor never read the contract).

-4-

Had Plaintiffs' November 14, 2005 complaint alleged their RICO claims, such claims would have clearly fallen within the four-year statute of limitations.  Just as clear, however, is that unless the second amended complaint relates back to the original complaint, the RICO claims are time barred.  The relation back doctrine is codified in Rule 15(c), which states, "An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrences set forth or attempted to be set forth in the original pleading."  Thus, whether the second amended complaint relates back to the original complaint "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  Mayle v. Felix, 545 U.S. 644, ___, 125 S. Ct. 2562, 2572 (2005).  "So long as the original and amended [complaints] are tied to a common core of operative facts, relation back will be in order."  Id. at 2574.

The defendants argue that the second amended complaint does not relate back because it alleges additional facts not contained in the original complaint.  Specifically, the defendants claim that since the original and first amended complaints were insufficiently pled to assert a common law fraud claim, the defendants were not provided with adequate notice of the possibility of a RICO claim. In support of this argument, the defendants put forth Popp Telecom, Inc. v. Am. Sharecom, Inc., 361 F.3d 482 (8th Cir. 2004).  In Popp

<u>Telecom</u>, dissenting shareholders to a freeze-out merger filed suit in a Minnesota federal court alleging that the corporation's merger was invalid due to several incidents of securities fraud.  <u>Id.</u> at 487.  The district court dismissed the complaint, but the Eighth Circuit reversed and remanded.  On remand, the plaintiffs moved for leave to file their third amended complaint and, along with the original fraud claims, added a RICO securities fraud claim.  <u>Id.</u> The trial court denied the plaintiffs' motion to amend finding that the RICO claim was barred by the Private Securities Litigation Reform Act ("PSLRA"),[3] which prohibits securities fraud claims from being brought under RICO.  PSLRA was enacted after the original complaint was filed but before the amended complaint was filed.

On appeal, the plaintiffs argued that their amended complaint should relate back to the filing of their initial complaint, which predated PSLRA.  The Eighth Circuit found PSLRA to be procedural; therefore, for the plaintiffs' RICO securities fraud claim to be cognizable, it must have been filed before PSLRA's enactment.  <u>Popp Telecom</u>, 361 F.3d at 489.  The court of appeals refused to allow the RICO claim to relate back since "the Dissenters had no right to expect that their RICO claim would survive any change in the law . . . ."  In a footnote, the court stated that even if PSLRA was not

_____

[3]The pertinent portion of PSLRA states, "No person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." 18 U.S.C. § 1964(c).

procedural, Rule 15(c) would not require the amended complaint to relate back.  The court reasoned that the district court did not abuse its discretion in denying the motion to amend because the amended complaint contained "fifteen pages of new facts that were not alleged in the original complaint, including . . . strawman transactions."  Id. at 490 n.8.  Since these strawman allegations were first alleged in the amended complaint, the original complaint did not provide sufficient notice for the amended complaint to relate back.  Id.

Many other cases, however, hold that a newly alleged RICO amendment may properly relate back to an original complaint containing only common law fraud claims.  For example, in Benfield v. Mocatta Metals Corp., 26 F.3d 19 (2d Cir. 1994), the Second Circuit reversed a district court's denial of the plaintiffs' motion to amend.  The Benfield plaintiffs originally brought a common law fraud action concerning the defendant's alleged Commodity Exchange Act ("CEA") violations.  26 F.3d at 23.  Over one year after filing the initial complaint, Plaintiffs sought to add a RICO claim which arose from "the same or similar wrongful acts" as the CEA claims.  Id.  The district court denied the motion to amend and held that the amendment was futile because the RICO claim would not relate back to the original complaint which only alleged fraud.  The court of appeals, holding that the RICO claim did relate back, reversed and stated,

>Although RICO requires more in the way of evidence [than
>CEA or common law fraud claims], proof of the RICO cause
>of action nonetheless involves evidence of the underlying
>fraudulent acts pleaded by Benfield. [The defendant]
>therefore was placed on notice that a RICO claim, based
>in large part on the fraud already alleged, **might** be made
>against it.

Id. (citations omitted).

Similarly, in Feinberg v. Katz, 2002 WL 1751135 (S.D.N.Y. July 26, 2002), the plaintiff sought to amend his complaint, which only contained a common law fraud allegation, to include a RICO claim. 2002 WL 1751135, at *10.  The defendant argued that the motion to amend should be denied because "RICO claims are of an entirely different species than common law fraud claims . . . . [T]he relation-back doctrine cannot extend to claims that convert garden variety fraud into RICO causes of action."   Id.   The district court, however, held that Rule 15(c) required the newly pled RICO claim to relate back so long as the original complaint referred to general acts of fraud that could support a RICO claim. Id., citing Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 35-36 (2d Cir. 2002).   The court stated, "[D]efendants are put on notice sufficient to satisfy Rule 15(c) when acts of malfeasance that become RICO predicate acts are first alleged under a different fraud theory.   This is so **even when the acts of fraud are "not fully developed," and no hint of a future RICO claim is given."** Id. at *11 (citations omitted).  See also Daniels v. Bursey, 313 F. Supp. 2d 790, 811 n.7 (N.D. Ill. 2004) (noting summarily that

plaintiffs' RICO claim related back to the original complaint, which only contained a common law fraud claim, since both claims arose from the same conduct); accord Reynolds v. Condon, 908 F. Supp. 1494 (N.D. Iowa 1996) (allowing relation back of a newly alleged RICO claim where the original complaint alleged only fraud because the RICO predicate acts arose from the same "common nucleus of operative fact" as the fraud claim).

In their response to the plaintiffs' amendment, Defendants Washington Mutual and Long Beach[4] claim that in the first amended complaint "not a single specific factual allegation is made against [Washington Mutual or Long Beach]; therefore, the second amended complaint's more specific allegations cannot relate back." (Mem. Auth. Resp. to M. to Amend 6.) In the first amended complaint, however, after four pages of explaining the core fraud allegedly committed by the defendants, Plaintiffs clearly allege, "Long Beach Mortgage Company [and] Washington Mutual acted in concert with, conspired with, assisted, aided or ratified the fraudulent conduct of Defendants Buford, Burford Land, and Derivaux." While such an allegation is certainly not specifically pled, it is sufficient to put the lenders on notice of the plaintiffs' claim that they "conspired to commit fraud." See Tho Dinh Tran, 281 F.3d at 35–36 (stating that common law fraud claims need not be fully developed

---

[4]The other defendants did not challenge the plaintiffs' motion to amend.

-9-

for the relation back of newly alleged RICO claims).

In the second amended complaint, the plaintiffs further develop the factual underpinnings of their fraud claims. These allegations more specifically explain how the fraud was allegedly perpetrated against the plaintiffs. Plaintiffs' RICO claims, which includes a claim of RICO conspiracy between all the defendants, arise from the same factual background as the common law fraud claims alleged in the first amended complaint, i.e., the 2001 contract and the January 24, 2002 closing. Since both the newly alleged RICO claims and the original fraud claims arise from the same transactions, the second amended complaint relates back to the original complaint. When a party merely states a new legal theory or further expounds upon facts previously alleged, the proffered amended complaint relates back to the previously filed complaint's filing date. See F.D.I.C. v. Conner, 20 F.3d 1376, 1386 (5th Cir. 1994) ("[I]f a plaintiff seeks to . . . state a new legal theory of relief, or amplify the facts alleged in the prior complaint, then relation back is allowed."); F.D.I.C. v. Bennett, 898 F.2d 477, 470 (5th Cir. 1990) (allowing plaintiff's newly alleged legal theory to relate back to the original complaint where the rights asserted arose from the same "conduct, transaction, or occurrence").

B.   Plaintiffs Have Successfully Stated a RICO Claim

Defendants Washington Mutual and Long Beach argue that the

plaintiffs failed to state a RICO claim in their second amended complaint.   First,  the  defendants  assert  that  the  plaintiffs complaint  should  be  dismissed  for  failure  to  comply  with  the Southern District of Mississippi's Standing Local Order concerning RICO cases (Standing Order, July 13, 1998).  Second, the defendants claim that the complaint should be dismissed for failure to plead the predicate fraud with particularity.

The  Standing  Local  Order  requires  a  "RICO  Statement"  to "accompany  the  filing  of  the  RICO  complaint."  (Standing  Order, July 13, 1998).  The RICO Statement must conform to the nineteen requirements found in the Standing Local Order to be sufficient. At this juncture, the plaintiffs have not filed a RICO Statement with  the  Court.    The  defendants  overlook,  however,  that  the plaintiffs' amended RICO complaint **has yet to be filed**; rather, only a Motion to Amend the Complaint is currently pending before the Court.[5]

Federal Rule of Civil Procedure 9(b) requires fraud to be pled with particularity.  This particularity requirement extends to RICO claims predicated on mail and wire fraud, and it requires the plaintiffs to specify "the who, what, when, and where <u>before</u> access to the discovery process is granted." <u>williams v. WMX Tech., Inc.</u>, 112 F.3d 175, 178 (5th Cir. 1997) (emphasis in original).  In their

---

[5]In their reply, the plaintiffs assured the Court that they would file a RICO Statement if the Court granted their Motion to Amend.

second amended complaint, Plaintiffs give a very detailed account of the facts surrounding the underlying fraud.  These facts explain in depth the appraisal fraud and the HUD-1 fraud allegedly perpetrated by Buford, Upchurch, and Derivaux.  While the conspiracy claims against Washington Mutual and Long Beach are pled more generally, the defendants have provided no authority requiring a RICO conspiracy to be pled with particularity.

II.   **Plaintiffs' State Law Claims Are Time Barred**

Along with their RICO claims, Plaintiffs allege common law fraud.  The defendants argue that these claims should be dismissed as untimely.  As previously mentioned, Gray and Harris's fraud claim accrued on January 24, 2002 when the closing was held.[6]  See Carter v. Citigroup, Inc., No. 2005-CA-00039-SCT, ¶¶41-45 (Miss. July 20, 2006) (holding that claims of misrepresentation and fraudulent concealment accrue "at the time the loan documents were executed" since the alleged fraud occurred at the closing). Claims of intentional misrepresentation are subject to Mississippi's general three-year statute of limitations. Sanderson Farms, Inc. v. Ballard, 917 So. 2d 783, 789 (Miss. 2005).  Since suit was not brought until November 14, 2005, the plaintiffs' common law fraud claims are time barred.

---

[6]The plaintiffs have failed to allege any subsequent misrepresentation on the part of any defendant that would invoke the doctrine of fraudulent concealment.  See Carter v. Citigroup, Inc., No. 2005-CA-00039-SCT, ¶¶44-45 (Miss. July 20, 2006)

III. **<u>Plaintiffs' TILA, ECOA, RESPA, and Community Reinvestment Act Claims Are All Time Barred</u>**

Plaintiffs alleged several violations of various federal acts. These claims all carry a one year statute of limitations and are therefore time barred.

### CONCLUSION

Because Plaintiffs' Second Amended Complaint relates back to the filing of the initial complaint, the amendment is not futile and should therefore be allowed.  Plaintiffs' state law and non-RICO federal claims, however, are time barred.  Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' Motion to Amend the Complaint [**docket entry no. 10**] is **GRANTED**.

IT IS FURTHER ORDERED the defendants' Motions to Dismiss [**docket entries nos. 3 & 5**] are **GRANTED IN-PART** and **DENIED IN-PART**.

IT IS FURTHER ORDERED that the plaintiffs have ten (10) days to file their Second Amended Complaint along with the required RICO Statement.

SO ORDERED this, the 13th day of December, 2006.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE